UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>PROPHECY ASSET MANAGEMENT, LP, JEFFREY SPOTTS, and BRIAN KAHN,<br><br>Defendants. | Hon. Michael A. Shipp<br><br>No. 25-cv-16058 (MAS) |

MEMORANDUM OF LAW IN SUPPORT OF THE
MOTION OF THE UNITED STATES FOR LEAVE
TO INTERVENE AND FOR A STAY

                              TODD BLANCHE
                              U.S. DEPUTY ATTORNEY GENERAL

                              ALINA HABBA
                              ACTING UNITED STATES ATTORNEY
                              SPECIAL U.S. ATTORNEY
                              970 Broad Street
                              Newark, New Jersey 07102
                              (973) 645-2700

On the Memorandum:
KELLY M. LYONS
AARON L. WEBMAN
Assistant United States Attorneys

## PRELIMINARY STATEMENT

The allegations in this civil enforcement action filed by the United States Securities and Exchange Commission ("SEC") (the "SEC Action") against Prophecy Asset Management, LP ("Prophecy"), Jeffrey Spotts, and Brian Kahn (together, the "SEC Defendants"), substantially overlap with active criminal cases filed in this District against the SEC Defendants and others that are captioned *United States v. John Hughes*, Crim. No. 23-867 (MAS) and *United States v. Jeffrey Spotts*, Crim. No. 25-519 (MAS) (the "Spotts Criminal Case"), and include any related proceedings before the United States District Court or the United States Magistrate Court (collectively, the "Criminal Cases").

The United States moves to (1) intervene in the SEC Action pursuant to Rule 24 of the Federal Rules of Civil Procedure; and (2) stay further proceedings and discovery in the SEC Action in order to preserve the integrity of the prosecution of the Criminal Cases, advance the public interest, and prevent the SEC Defendants from circumventing the narrow confines of criminal discovery through broad civil requests and related litigation.

## STATEMENT OF FACTS/PROCEDURAL HISTORY

**The Hughes Cases**

On or about November 2, 2023, the SEC filed a complaint alleging that Hughes violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)]; Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act" [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and Sections

2

206(1), (2), and (4) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1), (2), and (4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8]. *See S.E.C. v. Hughes*, Civ. No. 23-21816 (MAS). The SEC's complaint against Hughes (the "Hughes Complaint") alleged that Hughes engaged in a complex scheme to defraud investors through deception, misleading statements, and material omissions relating to certain low-risk, transparent, and diversified investment funds (the "Funds") that Hughes and "Individual 1" managed through their company, Prophecy.

The Hughes Complaint further alleged: (1) that Hughes, Individual 1, and Prophecy told investors and prospective investors that the Funds were diversified, liquid, actively risk-managed, generated positive returns every month since their inception, and that the primary investment fund was secured by cash collateral; (2) that, in reality, Hughes, Individual 1, and Prophecy did not achieve those results and did not provide investors with stable, diversified, risk-managed, well-performing funds; (3) that Hughes, Individual 1, and Prophecy concentrated a huge percentage of the Funds' assets with a single subadvisor, "Individual 2," who sustained massive losses unbeknownst to investors; (4) that to conceal the losses from their investors, prospective investors, auditor, and administrator, Hughes, Individual 1, and Individual 2 fabricated documents, effectively eliminated an important part of Prophecy's strategy for reducing risk, and engaged in sham, round-trip transactions designed to give the false appearance that investments had performed profitably; and (5) that these actions, and others, caused the investors to lose in excess of $350 million.

The same day the SEC filed the Hughes Complaint, November 2, 2023, Hughes appeared before this Court, waived indictment, and pled guilty to a criminal information (the "Hughes Information"). *See* Crim. No. 23-867 (MAS). The Hughes Information charged a single count of conspiracy to commit securities fraud contrary to 15 U.S.C. § 78j(b) and 7, C.F.R. § 240.10b-5, in violation of 18 U.S.C. § 371.

The Hughes Information alleged that Hughes engaged in a conspiracy to defraud investors with two then-uncharged co-conspirators, identified in the Information as Co-conspirator-1 (Individual 1 in the Civil Action) and Co-conspirator-2 (Individual 2 in the Civil Action). As alleged, the conspiracy involved fraudulent misrepresentations and omissions relating to, among other things, the low-risk and diversified nature of the Funds; the manner and purpose in which Hughes, Co-conspirator-1, and Co-conspirator-2 used the Funds; and the Funds' financial condition leading up to their collapse in March 2020. Importantly, although somewhat narrower than the civil complaint, the Information alleged similar facts, identical victims, and the same approximate loss amounts.

On or about November 20, 2023, the Government moved this Court to intervene in the SEC's case against Hughes and to stay that action. On April 10, 2024, the Court granted the Government's motion.

**The Spotts Indictment**

On August 27, 2025, a grand jury in Newark returned an Indictment charging Spotts, a defendant in the SEC Action, with four counts: wire fraud conspiracy, in violation of 18 U.S.C. § 1349 (Count 1); wire fraud, in violation of 18 U.S.C. § 1343

(Count 2); securities fraud conspiracy, in violation of 18 U.S.C. § 371 (Count 3); and securities fraud, in violation of 15 U.S.C. § 78j(b) and 78ff and 17 C.F.R. §§ 240.10b-5 (Count 4) (the "Spotts Indictment"). *See* Crim No. 25-519, ECF No. 1. The Spotts Indictment was filed under seal. *See* Crim No. 25-519, ECF No 2. On September 29, 2025, Spotts appeared before this Court for arraignment and the Spotts Indictment was unsealed. *See* Crim No. 25-519, ECF Nos. 5 and 6.

The Spotts Indictment alleges that, between January 2015 and March 2020, Spotts and Hughes, as co-founders and officers of Prophecy, engaged in a scheme to defraud Prophecy's investors by, among other things, "lies, deception, misleading statements, and material omissions related to, among other things: (a) the purported low-risk, transparent, and diversified nature of Prophecy's funds; (b) the manner and purpose in which SPOTTS, Hughes, and Co-conspirator-1 [Co-Conspirator-1 from the Hughes Information] used money from those funds; and (c) the financial position of Prophecy's funds leading up to its collapse in or around March 2020."

**The SEC Action**

On September 29, 2025, the SEC filed a complaint in this matter that charges Prophecy, Spotts, and Kahn with violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)]; Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act" [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and Sections 206(1), (2), and (4) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1), (2), and (4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8] (the "SEC Complaint"). The SEC Complaint seeks an order

permanently restraining and enjoining Prophecy, Spotts, and Kahn from engaging in conduct in violation of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)]; Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act" [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and Sections 206(1), (2), and (4) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. §§ 80b-6(1), (2), and (4)] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8], disgorgement of ill-gotten gains plus prejudgment interest, penalties, and officer and director bars against Spotts and Kahn (the "SEC Complaint"). ECF No. 1.

The SEC Complaint arises from the same factual allegations in the Spotts Indictment. Similar to the Spotts Indictment, the SEC Complaint alleges that, Spotts and Hughes, through Prophecy, raised hundreds of millions of dollars based on misrepresentations about Prophecy's risk mitigation measures and the liquidity of their investments, and that, as the Prophecy funds lost substantial investor funds, Spotts and Hughes hid these losses by fabricating documents, and lied to investors about Prophecy's financial condition. *See* SEC Complaint ¶¶ 3-11.

As of the date of this filing none of the SEC Defendants has answered the SEC Complaint.

The Government has consulted with counsel for Spotts and Kahn,[1] who have each advised that they do not oppose the Government's motion for a stay. The SEC has advised that it does not take a position on the Government's motion.

---

[1] Douglas Books, who represented Kahn during the SEC's investigation and who is listed as counsel for Kahn in the SEC Complaint, has informed the

6

For the reasons set forth below, the Court should stay the SEC Action pending disposition of the Criminal Cases.

## ARGUMENT

### I. THE UNITED STATES SHOULD BE PERMITTED TO INTERVENE IN THIS ACTION FOR THE LIMITED PURPOSE OF SEEKING A STAY

In its present application, the United States seeks to intervene for the limited purpose of staying this matter to protect the integrity of the ongoing prosecution of the Criminal Cases. Under the Federal Rules of Civil Procedure, there are two bases for intervention: intervention as of right pursuant to Rule 24(a), or permissive intervention pursuant to Rule 24(b). The United States' intervention in the SEC Action is supported under both grounds.

#### A. The United States Is Entitled to Intervention as of Right

Federal Rule of Civil Procedure 24(a)(2) provides for intervention as of right as follows, in pertinent part:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2).

---

Government that he will not be representing Kahn in the SEC Action, but that Kahn does not object to this motion.

The SEC Complaint does not identify counsel for Prophecy and no notice of appearance has been filed on Prophecy's behalf.

"A potential intervenor must satisfy four criteria to succeed on a motion pursuant to Rule 24(a)(2): '(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.'" *United States v. Terr. of the V.I.*, 748 F.3d 514, 519 (3d Cir. 2014) (quoting *Harris v. Pernsley*, 820 F.2d 592, 596 (3d Cir. 1987) (citation omitted)). "Although these requirements are intertwined, each must be met to intervene as of right." *Harris*, 820 F.2d at 596 (citation omitted).

### 1. The United States' Motion for Intervention is Timely

Whether a motion to intervene is timely is "determined from all the circumstances and, in the first instance, by the [trial] court in the exercise of its sound discretion." *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 223 F.R.D. 326, 328 (D.N.J. 2004) (citing *In re Fine Paper Antitrust Litig.*, 695 F.2d 494, 500 (3d Cir. 1982) (quotations omitted)). Courts in the Third Circuit weigh three factors in determining timeliness: "(1) the stage of the proceeding; (2) the prejudice that delay may cause the parties; and (3) the reason for the delay." *Mountain Top Condo. Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 369 (3d Cir. 1995).

Here, the United States' motion to intervene is timely. The SEC Action was initiated on September 29, 2025, and the SEC Defendants have not filed responsive pleadings. Four days later, on October 3, 2025, the Honorable Renee Marie Bumb, Chief U.S. District Judge, issued a standing order staying all civil matters involving

the United States and "its agencies" as a party "due to the lapse in congressional appropriations funding the federal government." *See* Standing Order 2025-06, "IN RE: STAY OF CIVIL MATTERS INVOLVING THE UNITED STATES AS A PARTY," (D.N.J. Oct. 3, 2025). That stay remained in place "until the federal government is funded through congressional appropriation," *id.*, which occurred on the evening of November 12, 2025. Furthermore, the Court has not yet set deadlines for additional proceedings and civil discovery has not yet commenced. Therefore, because the United States' motion to intervene will cause no delay or prejudice to the parties, it is timely. *See Mountain Top*, 72 F.3d at 370 (finding no prejudice from a four-year delay in filing intervention motion because, while some written discovery and settlement negotiations had occurred prior to the motion, there were no depositions taken, dispositive motions filed, or decrees entered during the four-year period); *see also S.E.C. v. Manor*, No. CV 20-597 (SRC), 2020 WL 3446306, at *2 (D.N.J. June 24, 2020) (finding intervention by the United States to be timely where the SEC civil action was "in its earliest stages").

  **2.** **The United States Has a Compelling Interest in the SEC Action That is Not Adequately Represented by the Existing Parties, and Which May Be Adversely Affected in the Absence of Intervention**

The United States has a substantial interest in the civil litigation that is not sufficiently represented by the existing parties and that may be harmed by the absence of the United States' intervention. Courts have recognized that "[t]he government ha[s] a discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in

9

the [parallel] criminal matter." *S.E.C. v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1988) (per curiam); *see also S.E.C. v. Ott*, Civ. No. 06-4195 (GEB), 2006 WL 8462454, at *2 (D.N.J. Nov. 29, 2006) (Bongiovanni, U.S.M.J.) (finding that "it [wa]s clear that the United States ha[d] a direct and substantial interest in th[e] [SEC civil] litigation, because the ongoing parallel criminal investigation concern[ed] the same business practices, contracts and payments at issue in th[e] [civil] matter"); *S.E.C. v. Dubovoy, et al.*, Civ. No. 15-6076 (MCA) (D.N.J. Jan. 29, 2016) (Hammer, U.S.M.J.) (Dkt. No. 240) (granting United States' motion to intervene and stay SEC case based on same securities fraud scheme charged in criminal indictment, even though some of the defendants in the SEC case were not charged in the criminal indictment and opposed the stay request). This interest is present here, because if not stayed, the SEC Action presumably will proceed to the discovery stage and thus enable Spotts to extract material from the United States that he would not otherwise be entitled to in the Spotts Criminal Case at this stage.

Furthermore, intervention is necessary because only the United States can effectively represent these interests in the SEC Action. The SEC Action and the parallel Criminal Cases involve the same defendant, Spotts, allegedly perpetrating the same fraudulent scheme, involving the same securities, and carried out over the same time period. However, "the interests of the SEC in enforcing the provisions of the Securities and Exchange Act of 1934, and of Defendants do not represent those of the United States." *Ott*, 2006 WL 8462454, at *3 (citation omitted). The United States' interests concern safeguarding the criminal investigation and prosecution, matters

10

separate and apart from the SEC's interests in protecting the integrity of financial markets. *See Manor*, 2020 WL 3446306, at *2 ("The SEC, though an agency of the federal government, has an interest in protecting the integrity of financial markets. This interest is not only distinct from the Government's interest in the criminal prosecution but also has the potential to conflict with it."). The interests of the litigants in the SEC Action may be adverse to those of the United States to the extent they seek to discover and publicize matters that are the subject of the ongoing criminal prosecution; intervention by the United States is necessary, therefore, in order to make sure its interests are adequately represented and protected.

Based on the foregoing, the United States should be granted leave to intervene as of right pursuant to Fed. R. Civ. P. 24(a).

### B. Alternatively, the United States Should be Granted Permissive Intervention Because There are Common Questions of Law and Fact in the SEC Action and the Criminal Cases

Federal Rule of Civil Procedure 24(b)(1)(B) provides an alternative means for intervention—specifically, permissive intervention—where a party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "It is well-established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding, which is anticipated or already underway, that involves common questions of law or fact." *S.E.C. v. Downe*, Civ. No. 92-4092 (PKL), 1993 WL 22126, *11 (S.D.N.Y. Jan. 26, 1993) (citing *Chestman*, 861 F.2d at 50); *S.E.C. v. One or More Unknown Purchasers of Sec. of Global Indus.*, Civ. No. 11-6500 (RA), 2012 WL 5505738, *2 (S.D.N.Y. Nov. 9, 2012); *Board of Governors of the Federal Reserve Sys. v. Pharaon*, 140 F.R.D. 634, 638 (S.D.N.Y. 1991); *First Merchants Enterprise, Inc. v. Shannon*, No. 88 Civ. 8254 (CSH), 1989 WL 25214 (S.D.N.Y. Mar. 16, 1989). "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

Here, the SEC Action and the corresponding criminal prosecutions arise out of numerous common questions of law and fact related to the same securities fraud conspiracy orchestrated by the same defendants. Moreover, intervention will not cause undue delay or prejudice the parties, particularly since the civil discovery process has not commenced. Accordingly, even if the Court were to find that the

12

United States may not intervene as of right, the Court should exercise its discretion to allow the United States to intervene in this case for the limited purpose of moving for a stay.

## II. A STAY OF THE SEC ACTION IS NECESSARY TO PROTECT THE INTEGRITY OF THE CRIMINAL CASES

### A. The Court Has the Authority to Issue a Stay

The United States seeks to intervene for the limited, and authorized, purpose of staying this matter. Courts have the inherent authority to stay proceedings in a civil case in the interests of justice when a parallel criminal prosecution is underway. *See RAD Services, Inc. v. Aetna Casualty & Surety Co.*, 808 F.2d 271, 279 n.3 (3d Cir. 1986); *S.E.C. v. HealthSouth Corp.*, 261 F. Supp. 2d 1298, 1326 (N.D. Ala. 2003). It is "clearly within the power of the district court to balance 'competing interests' and decide that judicial economy would best be served by a stay of civil proceedings." *United States v. Mellon Bank, N. A.*, 545 F.2d 869, 872-873 (3d Cir. 1976) (quoting *Texaco, Inc. v. Borda*, 383 F.2d 607, 609 (3d Cir. 1967)).

Factors that courts have considered in weighing whether a stay is warranted include: the extent to which the criminal and civil cases overlap; the interests of the public in the pending civil and criminal litigation; the potential prejudice to the civil parties of delaying their litigation; the interests of the court; and the status of the criminal case. *See Keating v. Office of Thrift Supervision*, 45 F.3d 322, 324–25 (9th Cir. 1995); *Walsh Sec. v. Cristo Prop. Mgmt.*, 7 F. Supp. 2d 523, 526-27 (D.N.J. 1998); *HealthSouth*, 261 F. Supp. 2d at 1326. These factors support a stay in this case.

### B. The Criminal and Civil Matters Overlap

There is substantial overlap between the Criminal Cases and the SEC Action. As noted, they involve the same fraud scheme, the same defendants, and the same securities. As a result, many of the potential witnesses in the Criminal Cases also are potential witnesses in the SEC Action.

### C. The Public Interest Favors a Stay

It is well-settled that "a trial judge should give substantial weight to [the public interest in law enforcement] in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities." *Campbell v. Eastland*, 307 F.2d 478, 487 (5th Cir. 1962). As one court has observed, "where both civil and criminal proceedings arise out of the same or related transactions, the government is ordinarily entitled to a stay of all discovery in the civil action until disposition of the criminal matter." *United States v. One 1964 Cadillac Coupe DeVille*, 41 F.R.D. 352, 353 (S.D.N.Y. 1966); *see also S.E.C. v. Shkreli*, 15-CV-7175, 2016 WL 1122029, *7 (E.D.N.Y. March 22, 2016) (granting government's motion to stay SEC case over the defendant's objection and noting, "the public's interest in the effective enforcement of the criminal law is the paramount public concern"); *S.E.C. v. Nicholas*, 569 F. Supp. 2d 1065, 1072 (C.D. Cal 2008) ("The criminal case is of primary importance to the public, the Defendants, and the Court"; the public's interest "is best served by resolving the criminal case in the most expeditious manner possible").

A stay of discovery in this matter also is in the public's interest because it will prevent the defendants from utilizing the expansive civil discovery rules to obtain

14

discovery that they otherwise would not be entitled to under the narrow rules of criminal discovery. As the Third Circuit explained in *Mellon Bank*, a civil litigant should not be permitted to proceed simultaneously with an overlapping criminal matter, because "the similarity of the issues [leaves] open the possibility that [the defendant] might improperly exploit civil discovery for the advancement of his criminal case." 545 F.2d at 873. The possibility of improper use of discovery, in part, led the court in *Mellon Bank* to stay discovery. *Id.* at 874. The concern expressed in *Mellon Bank* that criminal discovery limitations not be circumvented has been echoed by many courts that have stayed civil discovery in parallel proceedings.

For example, in *Campbell*, the Fifth Circuit stated:

> A litigant should not be allowed to make use of the liberal discovery procedures applicable to a civil suit as a dodge to avoid the restrictions on criminal discovery and thereby obtain documents he would not otherwise be entitled to for use in his criminal suit. Judicial discretion and procedural flexibility should be utilized to harmonize the conflicting rules and to prevent the rules and policies applicable to one suit from doing violence to those pertaining to the other. In some situations it may be appropriate to stay the civil proceeding. In others it may be preferable for the civil suit to proceed – unstayed. In the proper case the trial judge should use his discretion to narrow the range of discovery.

307 F.2d at 487 (internal citation omitted).

Courts around the country, including in this District, have relied on similar logic to stay civil discovery while criminal proceedings are ongoing. *See Ott*, 2006 WL 8462454 at *1-4; *Dubovoy*, Civ. No. 15-6076 (D.N.J.) (Dkt. No. 240); *Downe*, 1993 WL 22126, at *12–14; *In re Ivan F. Boesky Securities Litigation*, 128 F.R.D. 47, 49-50 (S.D.N.Y. 1989); *United States v. Hugo Key & Son, Inc.*, 672 F. Supp. 656, 657-59

(D.R.I. 1987); *Founding Church of Scientology v. Kelley*, 77 F.R.D. 378, 380-81 (D.D.C. 1977); *S.E.C. v. Control Metals Corp.*, 57 F.R.D. 56, 57-58 (S.D.N.Y. 1972).

Notwithstanding the concern that litigants will exploit the liberal civil discovery rules to their advantage, the United States does not have to demonstrate that any particular defendant already has unfairly taken advantage of the civil discovery provisions to the detriment of the United States or the public. Rather, it is presumed that criminal defendants and targets will make full use of such an unsurpassed opportunity to harm the Government's criminal cases. *See Integrated Generics, Inc. v. Bowen*, 678 F. Supp. 1004, 1009 (E.D.N.Y. 1988) (no need to find wrongful intent). Courts have recognized the unfair advantages inherent in civil discovery opportunities and have, accordingly, stayed discovery. *See, e.g.*, *Control Metals Corp.*, 57 F.R.D. at 57 (staying depositions of four grand jury witnesses).

In the present case, given the overlap of witnesses and issues between the SEC Action and the Criminal Cases, interrogatories and deposition notices in the SEC Action could undermine or otherwise hinder the criminal prosecution. *Campbell*, 307 F.2d at 487 n.12. Even if the defendants here "possessed the purest of motives," allowing civil discovery to go forward would make them "the beneficiar[ies] of materials otherwise unavailable to [the]m under the criminal rules . . . thus nullifying in effect the criminal discovery limitations." *In re Eisenberg*, 654 F.2d 1107, 1113-14 (5th Cir. 1981).

### D. The Public's Interest in Allowing the Criminal Cases to Be Completed Without Interference Outweighs the Minimal Prejudice to the Defendants From a Stay

The public's significant interest in allowing the Criminal Cases to run their course must be balanced against a civil litigant's interest in a final resolution of its case. All litigants, of course, have an interest in the swift resolution of their claims and defenses. The United States is mindful that neither the Court, the SEC, nor the litigants want this case to be delayed unnecessarily.

Nonetheless, disposing of the SEC Action expeditiously does not outweigh the importance of conducting an unimpeded criminal prosecution. This is especially true where a stay until the completion of any trial in the Criminal Cases will cause little to no particularized harm to the public, the SEC, or to the defendants, and even could benefit the litigants in light of the potential Fifth Amendment implications involved in proceeding with the SEC Action. *See Ironbridge Corp. v. C.I.R.*, 528 F. App'x 43, 46 (2d Cir. 2013) (unpublished and non-precedential) ("We also presume that parallel civil and criminal proceedings can sometimes burden the exercise of the Fifth Amendment privilege against self-incrimination."); *S.E.C. v. McGinnis*, No. 14-CV-6, 2016 WL 591764, *3 (D. Vt. Feb. 12, 2016) ("Defendants additionally point out that proceeding in the instant case may compromise their Fifth Amendment rights to the extent not already waived ...."); *S.E.C. v. Oakford Corp.*, 181 F.R.D. 269, 270 (S.D.N.Y. 1998) ("Often the [stay application filed by the criminal enforcement agency] is joined by the defendant as well, who otherwise confronts the prospect of expensive dual litigation and the dilemma either of having to testify in a pre-trial deposition or, by

17

invoking the privilege against self-incrimination, subjecting himself to a permissible adverse inference in the civil case.") (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976)).

### E. A Stay Would Likely Narrow the Issues in the SEC Action

Finally, a stay also would benefit the public interest by potentially narrowing (or eliminating) the issues to be decided in the SEC Action. *See In re Grand Jury Proceedings (Williams)*, 995 F.2d 1013, 1018 n.11 (11th Cir. 1993) ("Although stays delay civil proceedings, they may prove useful as the criminal process may determine and narrow the remaining civil issues."); *Texaco Inc.*, 383 F.2d at 609 (affirming decision to stay civil action because, among other things, "the trial of the criminal case [might] reduce the scope of discovery in the civil action . . . [a]nd . . . perhaps might also simplify the issues"); *Brock v. Tolkow*, 109 F.R.D. 116, 120 (E.D.N.Y. 1985) ("[T]he resolution of the criminal case might reduce the scope of discovery in the civil case or otherwise simplify the issues.").

For example, if the Spotts Criminal Case results in a guilty verdict against Spotts, the higher burden of proof in the criminal matter likely will mean that the jury's findings will have preclusive effect in the SEC Action. Likewise, if the Spotts Criminal Case results in a guilty plea by Spotts, this admission will undoubtedly narrow, and perhaps eliminate, the issues to be decided against him in the SEC Action. In either case, there would likely be little left to litigate civilly after a successful criminal prosecution.

## **CONCLUSION**

For the reasons set forth above, the United States respectfully requests that the Court grant it leave to intervene in the SEC Action and order a stay of the SEC Action until the conclusion of the Criminal Cases.

>
> Respectfully submitted,
> TODD BLANCHE
> U.S. Deputy Attorney General
>
> ALINA HABBA
> Acting United States Attorney
> Special Attorney
>
> By: _____
> Kelly M. Lyons
> Aaron L. Webman
> Assistant United States Attorneys

Dated: Newark, New Jersey
      October \_\_, 2025

**CERTIFICATE OF SERVICE**

I, Aaron Webman, an Assistant United States Attorney, hereby certify that:

On November \_\_\_\_ 2025, I caused a copy of the attached Motion and supporting Memorandum of Law to be served on the following persons:

Gregory R. Bockin (via ECF and Email)
John V. Donnelly, III
Philadelphia Regional Office
Securities and Exchange Commission
1617 JFK Boulevard, Suite 520
Philadelphia, PA 19103
*Counsel for the Securities and Exchange Commission*

Lee Vartan, Esq. (via ECF and Email)
Chiesa Shahinian & Giantomasi PC
105 Eisenhower Parkway
Roseland, NJ 07068
lvartan@csglaw.com
*Counsel for Jeffrey Spotts*

Brian Kahn (via Email and U.S. Mail)
9935 Lake Louise Drive
Windermere, FL 34786
bkahn@vintcap.com

Delaware Secretary of State (via Hand Delivery)
401 Federal Street, Suite 4,
Dover, DE 19901
*Statutory Agent for Prophecy Asset Management, LP*

I declare under the penalty of perjury that the foregoing is true and correct

_____
Aaron L. Webman
Assistant U.S. Attorney

Dated: Newark, New Jersey
     November \_\_, 2025